UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

FILED

17 MAR 21 PM 12: 10

CLERK. U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

JASON PAUL WOLFE,
    Plaintiff,

  V.

GARY MOHR (O.D.R.C.,Director
Individual,official capacity)
JASON BUNTING (M.C.I.,Warden,
Individual,official capacity)
UNKNOWN DEP. WARDEN SPECIAL
SERVICES (M.C.I.,Individual,
official) UNKWN. DEP. WARDEN
OPERATIONS (M.C.I.,Individual,
official)UNKWN. MAJOR (M.C.I.,
Individual,official capacity)
UNKWN. CORECTIONS OFFICERS A.B.
C.D.,E.F.,G.H.,I.J.(M.C.I.,
Individual,official) CHIEF
MEDICAL OFFICER (M.C.I.,Indivual:
official)UNKWN TURNER (M.C.I.,
H.C.A.,Individual,official)
OPUKU ADUSE,C.N.P.,NURSE A.B.,
C.D.,E.F.,G.H.,I.J.(M.C.I.)
MARION GENERAL HOSPITAL,UNKWN.
INSURANCE COMPANIES,MELISSA S.
KNARR,D.O.,(M.G.H.)UNKWN. CHIEF
MEDICAL OFFICER (M.G.H.) NURSES,
A.B.,C.D.(M.G.H.) BRIGHAM SLOAN
(La.E.C.I. Warden Individual
official,corporate)UNKWN FISHER
(La.E.C.I. Ex.Asst.Warden,
Individual,official,corporate)
PAUL SACKETT (La.E.C.I,Inspector:
Individual,official,corporate)
LINDA WITT (La.E.C.I.,H.C.A.,
Individual,official,corporate)
SHANNON SWANSON,M.D.(C.M.O)
UNKWN. AIKEN,C.N.P.,UNKWN.REBERA
R.N., STEVEN DEGUIRE,PhD.(mental:
Health supervisor)DAVE RUDLER,
LISW,UNKWN TRAN,M.D.
UNKWN MEDICAL CONTRACTOR, C.C.A.:
O.D.R.C. OFFICE OF CORRECTIONAL
HEALTH CARE (Reserving the right
name and rename unkwn.defendants

COMPLAINT

CASE NO._____

JUDGE:——————————

1 17 CV 0595

JUDGE GWIN

This is an original action brought by the plaintiff,

JASON WOLFE, pro se, under 42 U.S.C. §§ 1983, 85, 86, 88. For

a series of constitution vioations. The defendants acted

under the color of law to subject me to cruel and unusual punishment. As well as conspired together to deprive me of constitutional protections, Denieing me equal protections of laws and liberties created in O.A.C, O.D.R.C policies and state federal laws. Defendants deprived me of due processes and acted under the color of law to retaliate against me for exersizing protected freedoms and trying to seek redress. The defendants have and are denying me meaningful access to the courts by interferance with U.S. mail, by interferance with the grievance procedure.

The result of the defendants actions did cause me serious physical harm physical, psycological and emotional pain and and suffering.

The defendants are depriving me access to grievance and access to courts also by with holding documentation and access to my medical as well as mental health records, using mental health as a punitive measure to discredit and conceal what has occured as well as creating documentation that I have a right to and A right to contest.

The details and circumstances are set forth in this complaint.

2

This is an original action brought by the plaintiff,Jason

Wolfe, pro se,under 42 U.S.C §§ 1983 & 88 for a series of

constitutional violations comitted under the color of law. the

Plaintiff is a State prisoner in the Ohio Dept. of rehabilitation

and Corrections. This complaint is for violations of the 8th,

5th,14th, and 1st amendments.

## COUNT 1.Cruel&Unusual Punishment,Due Process,Equal Protections

1.) Plaintiff Jason Wolfe A419171 is a State prisoner servin

an 18 year sentence, from Montgomery County Courts. I am almost done

serving my sentence, it expires 4-4-2019. I am serving a

definate stated term for 3 cts. robbery, gun specs,r.s.p.

an aggregate sentence,with a definate release date. In Feb.

and Mar. of 2016 I was being housed in the segregation unit

at Marion correctional Institution,awaiting administrative

transfer to another institution.

2.)On or about March 20th 2016, I started having abdominal pains

wich I began to complain about to corr. officer A.B who was

working the seg. unit that night, as well as officer C.D. These

officers repeatedly told me,"shut the fuck up and lay down"

Eventually they did call medical,I was taken to medical a short

time later. I talked to an unknown nurse (not a defendant) who

3

gave me some antacids and sent me back to the seg. unit.

3.) The following night as the pain persisted and worsened, I began to tell the officers A.B & C.D, These officers told me,"shut the fuck up" and refused to call medical. I continued to complain and ask for medical.

4.) Corrections officer A.B then contacted Unknown Liutenant A.B and gave false information. Stating that I said I was gonna kill myself and had a sheet tied around the window, something to that effect.This was a means of harrasment for the officers.

5.) Liutenant A.B then came to the segregation unit to interview me. I explained to Liutenant A.B. that officer A.B. was lieing and that I had been requesting medical for the past five hours and that this was a means of punishing me for asking for medical.

6.) At that time Liutenant A.B made a decision to initiate the suicide prevention protocols and not initiate the medical. All my propery was taken, I was moved to a suicide prevention cell. The cell was Ice cold there was no heat in there and the exterior window was broken,cold air was coming from the outside and it was below freezing temperatures.

7.) I continued to ask for medical and now heat as well,as I had no clothes blanket or shoes&socks. Eventually different

4

officers came on duty,who I explained to that I needed medical

and what had been occuring. Officers E.F. contacted Unknown

Nolan,Lt.I was hand cuffed and escorted to medical. The nurse

from the previous evening as well as another nurse(not defendant)

interviewed me and also took a urine sample. That nurse then

contacted unknown medical authority who authorized me to go

to Marion General Hospital. Decision was made to send me out

for the abdominal pain.

8.) Unknown Nolan,Lt. then contacted higher security personel

and recieved authorization from Jason Bunting,Warden or his

designee and arranged for officers E.F,G.H. to transport me

by O.D.R.C van to Marion General Hospital. It was Third shift,

on or about March 22, 2016.

9.)I was taken to Marion General Hospital to back door entrance,

where officers E.F.,G.H escorted me to a room I believe to be

emergency room.

10.) I was interviewed by an unknown nurse employed by Marion

General Hospital.She took my name and Social security number,

she asked me some generalized questions and went through a check

list. It was a routine admissions procedure.

11.) A short while later a very large man I believed to be a

Doctor came into the room he smelled like liquor,he didnt identfy

himself. He asked,"What's wrong with you?" I said,"I dont know,

feels like my kidney's." Or something to that effect,that was

the entire interaction, he left the room.

12.) A short time later a woman who I would later dicover,threw

attempting to review my prison medical records,was Melissa S Knarr,Doctor of Osteopathy,came into the room. She had a clip board, She said,"Sign this, I said,"I said,"What is it?" She said,it just allows us to run some test on you." This was false misleading statements,made fraudulently and omitting key facts to obtainmy signature.That was the entire conversation I had with Melissa Knarr,D.O employed by Marion General hospital. I relied on D.O. Knarrs' information in that I was consenting to run some testing to figure out what was going on.

13.) At this time defendants, corr. officers E.F.,G.H.,I noticed was taking pictures,videos and texting communications of me,about what was going inside the room with their personal cell phones. Illegally disclosing protected health information.Violating O.D.R.C security protocols, O.R.C. § 5119.27,42 U.S.C § 1320, and C.F.R 160.

14.) As I was about to sign the form,Melissa Knarr, says press hard three copies. every one in the room got a laugh.This all hapened in a matter of a minute. As soon as I signed the paper form. the nurse immediatly hooked me up to a monitor,blood pressure,heart rate,blood oxygen levels, and other devices.

15.)Melissa Knarr,D.O then inserted a very large,over size needle in my arm, it was a butterfly style with asmall rubber hose line with an apperatus on the end.

16.) She immediately drew 5 to 6 large tubes of blood and set them on the table beside her.

17.) She instructed me to urinate in a large container wich I did. She insructed me to lay back on the bed wich I did do.

18.) Before I realized what she was doing next,she had unpackaged a preloaded large syringe and locked it onto the I.V on my arm.

6

19.) She said,"This is the good stuff," and flashed her eyes at me.She did not inform me of any diagnosis,did did not inform of the contents of yhe syringe or any dangers or risks involved with,she did not get informed consent or allow me an decision.None of the procedural due processes that are mandated by O.A.C standards of care or state and federal mandates.

20.) Before I could object or do anything Melissa Knarr ijected me with the syringe. It was a two part shot,she pushed the pluger it clicked and stopped then she pushed it again until it was empty. At that my body felt like fire running through it, I'm uncertain how long I stayed conscious, for quite awhile suffering immense pain from the shot. Then I went out. Unconscious for an unknown period of time.

21.) I would later dicover though attempting to review my medical records,that Melissa Knarr,D.O injected me with "Sodiomchloride(NS)BOLUS 500" and that substance was listed again as a second time "Sodiomchloride(NS)BOLUS 500" there was also other substances and chemicals listed that I was prevented from viewing,but was administered without my consent and in bad faith.(I'll explain more of that later in the complaint) The shots came after I.V bags of unknown substances to me.

22.) The doctor deliberately and maliciously injected me chemicals and substances that would knowingly cause me serious and irreparable physical harm. She did attempt to deprive me of life,and did deprive me ofdue processes,liberties andequal protections of the laws.

23.) This radical departure from medical standards did result in serios physical,psycological and emotional damage. Some of these chemicals are very caustic and toxic and commonly used in death penalty and euthenasia treatments.

7

The elecronic documents that I would later view, showed that Melissa Knarr,D.O. diagnosed me with "Back Pain" These types of chemicals and substances that the D.O. used require all kinds of procedural due process and violated my 8th,5th 14th amend.

24.) I came too being wheeled in a hospital bed into a room with what I know too be a CT scan. Another nurse from Marion General, instructed me to lay on the electronic sled wich I did and I was given a CT scan. I was immediately released from the hospital, I was not told how long I was unconscious, was not told what happened what went wrong nothing. I believe I there for only several hours,but due to lack of information on the state of unconsciousness and being prevented from discovering, I cant be absolute in that detail.

25.) I was transported by van back to Marion Correctional by Officers H.F. and G.A. the same ones who brought me too the hospital. By the time I got back to the prison I was cold as ice, and my breathing was becoming very shallow and difficult.

26.) Inside the prison in the infirmory an unknown nurse took my vitals and expressed concern about them out loud, stating my temperature was very low and my vital signs wasnt right. I was put inside of a cell in yhe back of the infirmory and locked in. I continued to suffer very serious physical and psycological pain. I kept bleeding out of my nose and ears. I kept going unconscious, my heart kept stopping.

27.) I came too multiple times with an unknown man, whereing baby blue smocks, stratling me. Performing C.P.R on me smacking me in the face bringing me back to life inside the cell in the back of the infirmory.

28.) I became very confused and disoriented. My entire body was in severe pain and I would fall out in convulsions.

I could smell myself my entire body smelled of death and the

and the back of the infirmory. Prison authurities had inmate porters continuosly mopping with bleach to cover the smell and what was going on. I was unable to eat anything and rendered incapacitated due to the chemicals and substances administered devestated me.

29.) Qouku Aduse,L.P.N and medical personel ignored and disregarded all of this stuff. Prison Authorities did nothing to help me. After some days had passed I was moved back to the segregation unit, To the cell without any heat in it. I had no blankets, no clothing, no shoes, socks nothing to stay warm with. There was no heat, it was freezing temperatures. I begged for officers to get help to get medical attention to get heat, my please were ignored and disregarded. I was in the cell like this for about two weeks. The security officers watched me suffer

and did nothing, followed no protocols or policies that safe guard against inhumane treatment.

30.) I continued to suffer physically and psycologically from the drugs administered at Marion General Hospital. I would later discover that medical personel was charging me back to back "emergency" 3.00 co pay fees, deliberately ignoring physical signs and symptoms of serious complications while running up fees and billing myself and the state for services that wasnt happening, and knowingly falsifying billing reports. When the stemmed from the trip to the hospital.

31.) When I would go completely unconscious Nurse A.B. and C.D would show up and bring me back to consciousness, then

ignore and disregard the signs and symptoms indicating serios

9

complications. Not only ignore and failing to document certain things but also now falsifying vital signs of blood presssure heart rate, blood oxegyn levels wich was indicating serious warning signs, and need for emergency medical attention.

32.) Eventually Nurse C.D. and E.F would show up to perform an E.K.G. At that time the first E.K.G would read so bad that that Nurse C.D. made a comment to nurse E.F., "Oh my GOD he needs to be in a hospital."

33.) Two more times Nurses would show up to perform E.K.G Nurses C.D and G.H. at this point began literally acting as if the were doing E.K.G. Did not even plug the wire harness into the machine or plug the E.K.G into the wall. I would later discover through attempting to review my medical records that Opuku Aduse,L.P.N was signing off on the ficticious E.K.G results further attempting to conceal what had occured and serious complications wich was the result of Marion Generals work through Melissa Knarr,D.O

34.) Several times Apuku Aduse,L.P.N disregarded physical examinations, intentionally and deliberately disregarding

signs and symptoms of complications, as well as other evidence of electronic and paper records that was sent from Marion General to Marion Correctional of unlawful conduct and malpractice. Opuku Aduse,L.P.N, Unknown Turner,(H.C.A,at M.C.I.) and Chief Medical Officer at M.C.I had an obligation to report unlawful conduct under O.R.C 4723.34 exspecially with evidence electronic and paper, that it was a deliberate and malicios intent, with wanton infliction of serious physical harm. Not only did medical personel disregard the information they had and all of the complications that was a result of, they were taking strategic steps to conceal and cover up what was occuring.

It is O.D.R.C policies and customs that any and all results

diagnosis, labs recomendations and treatments are forwarded

and sent back to the prison, by paper and electronic means

for follow up. Not only failing in their obligation to report

unlawful conduct, but now also being deliberate in not protecting

me, and as well being deliberately indifferent to the

the disasterous results of the injections I was given at Marion

General Hospital. I would later discover that Opuku Aduse,L.P.N filed

false reports to the B.C.I in further attempting to conceal

what had taken place.

35.) After nearly two weeks in the cell without heat and

anything to keep warm. I was moved to another cell, I was still

suffering terible physical pain and psycological, emotional

distress over what had occured. A short time after that I was

transfered. On 4-19-2016 I was put on a bus to Franklin medical

Center, wich is the hub for O.D.R.C transfers then the same

day by van to Lorain Correctional Institution. I spent one night

there and boarded a bus the next morning to Lake Erie Correction

where I am now being housed.

36.) I was completely devestated over what occurred.

Eventually and slowly I began to recover slowly and began

to realize that serious physical damage had been done to me

and that I was not recovering from it, and that something was

seriously wrong in what had occured. I showed up at Marion

General over 200 lbs. I was experiencing severe pain and weight
loss, and decided to request to review my medical and mental

health records.

37.) I began to sed requests to Linda Witt, who is the

Health Care Administrator at La.E.C.I. My requests at first

was completely disregarded, I recieved no response. I continued

to send requests. Eventually I got a meeting with Unknown Rebera

and went over to review my madical file for the first time.

I was able to begin to discover some of the facts that I have

previously mentioned in this complaint. Nurse Rebera was
immediately defensive in every way attempting to prevent me

from facts I was seeking. Deliberately flashing information

of the screen as I was trying to read, rushing me out of the

meeting and refusing to pull up key information. She was refusing

to answer medical question and even shut the computer down.

38.) Playing a key role in denying me access to grievance and

discovery.

I was able to veiw documents from Marion General Hospital where

I was diagnosed with "Back Pain" and also learned of the name

Melissa s. Knarr,D.O the facts that I was able to obtain came

over the course of attempting to view my medical record on three

separate occasions. Rebera shut the computer down and then asked

if I was done. I told her that I was not and that I needed more

time with my files. She wanted to reschedule. The first meeting

was maybe three to five minutes.

39.) I began to start grieving using the grievance procedure

outlined in 5120-9-31. I wanted to send more time with my files

and gain more access to be able to formulate grievance and

complaint, and discover and name parties responsible. As well

as try to bring attention to Medical authories here on what

had occured.

40.) In O.D.R.C policy 68-med-01 and 68-med-18 and O.A.C

5120-9-60, when I got here it then became the responsibility

of Linda Witt,H.C.A Shannon Swanson,C.M.O, and UNknown Aiken

L.P.N. responsibility and obligation to actively identify any

problems and as well as report unlawful conduct under 4723.34.

of the O.R.C. They did not do that, now instead would begin

take active steps in preventing me from discovery and as well as well as provide false and inaccurate, misleading information deter me.

41.) I was at one point during the very hostile meeting, to view a false document that was filed to the B.C.I. stating that, "Inmate hung himself" and medical terminology "edema" and other false information in violation of O.R.C 3705.29(A),(H) (1). Also was containing other false statements wich aided in concealing what took place at Marion General.

42.) I am unsure if this document was used to obtain a death certificate or if Melissa Knarr filed a death certificate. A death certificate was issued in Marion County for Jason Paul Wolfe, and all my personal identifying information[1] Jason bunting

[1](Soc. Sec. # 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, D.O.B. 9-6-80, PlACE, SAN BERNADINO, CA) Warden filed reports in accordance with 5120.21(B)

I was able to veiw pathology reports and toxicology reports in my paper file as if I had been processed as dead medical records had been falsified. And in B.C.I and State Agencies records I was listed as deceased.(FBI 597786KB5, BCI 833938)

43.) Medical personel here became more and more hostile, refusing to answer questions,refusing to allow me to spend time with my file, not respoding to kites and complaints timely and avoiding key information.

44.) I attempted to review my file on three different occasions with nurse Rebera, each time I was prevented from discovery, I unable to make any real progress to mre adequately formulte grievances or a complaint. I was and am currently being denied access to make any copies or spend the time I need.

45.) On the second attempt to discover, I now noticed key documents missing from my file. Also noticed that more information was added to the documents, elecronic records from

Marion General was now being altered and intentionaly withheld. Key pieces of information was now replaced with other information and some not there at all. Medical personel here had realized what occured and now began actively engaging in concealing and disposing of condemning information, and evidence of unlawful conduct. Some events started to occur simultaniously. As I would try to get medical questions answered and they were deliberately avoided by Nurse unknown Rebera and now another Unknown Nurse They were acting as if they did not know anything about medical doctrine repeatedly refusing to answer questions. I was asked do you want to see a Doctor I said yes and was scheduled with

46.) some time later I would meet with L.P.N Aiken, maybe A week later after the second attempt at discovery. At this meeting Unknown Aiken,L.P.N refused to look into my medical history, continued to try to explain to me your not a sick guy she would not provide any medical related questions, she did make references to blood work and labs that I have never recieved here making misleading and false statements. Continued to try to direct me towards mental health. I grieved this specific incident as Unknown Aiken followed none of the standards of

care in O.A.C.
her actions further prevented me from discovery and also denied me equal protections of O.D.R.C policies,O.A.C,O.R.C and federal statutes that govern the physical examinations and relevent

conduct, further concealing information and failing to report.

Medical staff here Unknown Rebera R.N., Linda Witt,R.N., H.C.A., Shannon swanson Ph.d,C.M.O failed in their obligations to report unlawful conduct and now began to take active steps to conceal, illegaly supress information and evidence of criminal

14

commited by the other defendants.

47.) Unknown Nurse Rebera, R.N. prevented me from dicovery, and grievance, by physically grabbing the paper file out of my hand, flipping the information off the sceen before I could collect details, purposely refusing to pull up key information as well as falsifying the amount of time I was aloud to spend. providing false and misleading information about a very serious medical condition. She also refused to acknowelege CT scan result that was clearly indicated in my electronic file at that time. Rebara did falsify information in kites and omitted key questions I directed at her, her actions prevented me due process in grieving, denying me equal protections of the law created in D.R.C policies 68-med-01,68-med-18,O.A.C 5120-9-60 and 31, as well as O.A.C standard of care, was further concealing the evidence and failing to report.

48.) Linda Witt, began to fail to respond to kites in the seven day D.R.C policy, started failing to respond to complaints, failed to respond to requests for information, and as well as now illegaly releasing information that she was obligated to report. I was at this time grieving everything as it was occuring I was grieving the best I was able to with the little amount information that I was given access. During the same time as my first meeting with Rebera, I sent a kite to my mental health liason Dave Rudler,LISW Iexpressed to Mr. Rudler that I would like to develop some trust with him, I this point I wanted to see if anyone was going to assist me or help me. After a conversation with Rudler I then requested to see my mental heatlh file. So I could further engage in discovery and see how Rudler was documenting our interaction. I went to review my mental health file, at that time I expressed to Rudler that some doctors

15

used their positions in ways that wasn't their design. Rudler had already decided that he was not giving me access to any of my interdisciplinary notes paper or electronic, he simply stated we dont do that. In Ohio law statutes and O.A.C I have a clearly defined right to that information I believe its in O.A.C 4732.17. Rudler didnt investigate what I had relayed to, make any attempt to delve into what I was speaking on, he blewit off as "a little paranoid" He also has a duty to report any violions of law,malpractice,abuse. His actions now began to prevent me from discovery techniques, denying me access to file complaints, if I chose to. I have a right to not only access my file but to make changes in it if I disagree as well as have accurate information in it.

49.) On 11-22-2016 I was called to medical dept. when I arrived an Uknown Records technician came out and placed a form in front of me. She said sign this. I said what is it? She said it allows Marion General to releas Medical records to us. As I began to read it Unknown Rebera showed up and snatched it

out of my hand. This incident came after allot of pressing and grieving to get CT scan and blood results from Marion General hospital. We were standing in the lobby with alot of inmates. I kept asking to go somewhere private so I could read it in its entirety. Rebera said there is no where to go no where to go, noone is here. She said "fine dont sign it" I asked multiple "is this for the sole purpose to obtain information from Marion General" Rebera said "yes" I said this does not release any information from La.E.C.I? Rebera replied "no" Rebera then reaffirmed that the form only authrized La.E.C.I to obtain CT scan and blood results that she had been denying they had. This again false and misleading information and later discover that

16

the form was an attempt to shield the defendants from liability andthat the defendants here had been releasing information to Marion General Hospital of what was going on here and that there there is condemning evidence here. Rebera provided the false and misleading information again in furthering the conspiracy taking place among the defendants and the medical dept. was

50.) Immediately after I signed the form I felt I had been misled. I went straight back into medical and ran into Linda Witt. I explained that I was very uncomfortable how my signature was obtained and I expressed to her verbally that nothing is to be released from this place. I expressed that I wanted to immediately veiw the form to read it and ensure I havent been lied to again. I expressed that I needed to be on chronic care and that I needed more time with my file. At that time Linda Witt threatened me with disciplinary action and gave me a direct order to get out of the infirmary,"its over it went in your file, get out of here"

51.) I was left no choice but to use the slow grievance procedure wich was systematicaly failing at all stages and and procedure out lined in 5120-9-31.

52.) Alot of things started happening very slowly as I as I began to file more grievances over these specific incidence. Medical dept. was now not answering my informals, Paul Sackett was failing to respond to kites, complaints and denying me forms. Intentioanaly attempting to push me outside of my timelines by not allowing me to move forward when a responsible party would not respond.

53.) Paul sackett continually told me to come back tomarrow and allowed complaints that did get filed to be answered by the person they were against.

17

54.) I began to file complaints directly to chief inspectors office for Paul Sacketts failure to comply with the State grievance procedure under 5120-9-31. For preventing me me from grieving. After multiple complaints against inspector sackett for derilection of duty and I went to his office to try to obtain forms as he was again nit responding to kites. At that point he retaliated against me for exersizing my rights. He made false allegations and used a conduct report as means

of obscuring the fact that he had been not registering my complaints on Departmental offender tracking system. Also was means of detering me from exersizing my right to grievance and courts.

55.) Paul sacketts conduct report cuased me to suffer disciplinary sanctions 21 days of phone commisary, Jpay, and bunk restriction.

56.) It prevented me from accassing the library or any of the means of litigation. I had at that point 4 open grievances I recieved the responses to the informals back, but the grievance forms I sent was gone, and I never recieved any response. I couldnt go around sackett for fear of lieing and retaliation I sent a kite requesting to move to appeals to chief inspector and at that Sackett sent a kite back stating that their are no grievances for those dates. Lieing again and just throwing grievances away.

57.) Paul Sackett then placed me on grievance restriction as means of further suppressing my first amendment rights. All his actions did further attempts to suppress and conceal defendants actions in what parts they were now playing in covering and concealing documentation of grievances as well information and documentation that the defendants were obligated

18

to report. And denying me meaningful opportunity to grieve and and develop complaint.

58.) I went to multiple different people trying to find alternate ways of obtaining forms including librarians, case managers, unit managers, assistant unit managers. All to be told that Sackett was the only one who could give those out. Case manager Jennifer Lesher then began to tell me that she was not allowed to assist me and that Sackett had instructed her not to help me and notify him whenever I would request to contact attorneys.

59.) Once I found out Sackett was not registering my forms and denied me forms I began to make my own and attempt to mail them by U.S. mail to chief inspectors office. I dont believe they made it as I never recieved response. Many inmates at C.C.A ran La.E.C.I have this problem.

60.) I had discovered that several grivances I filed one against Unknown Aiken,C.N.P as well as another against Unkown Rebora,R.N was registered as informal complaints and one as grievance instead of appeal to chief inspector. these grievances was answered and responded to as if they were registered to chief inspectors office. I noticed their was no (HTTP:) hypertext mark up language on them indicating there was no transmission made. This is how C.C.A through Paul Sacketts office conceals grievances of substatial merit inside C.C.A walls to shield themselves of State oversight and prevents exaustion of state grievance procedure.

62.) The entire grievance restriction was baseless. I never abused the procedure, was using it as designed. Grieving individual incidence as they occured. On one response I did recieve from chief inspectors office, it indicated that the restriction was only threatened and not imposed through O.D.R.C.,

19

per policy, by the chief inspectors office. was a veiled attempt by Paul Sackett to further deter me from grieving incidence as they were transpiring. However four complaint were in to the grievance level before the retaliatory restriction was in effect. Alson 5120-9-31(e) states in part,"provisions shall be made to ensure that complaints wich present a substantial risk of serious physical harm such as medical concerns'" so even on restriction I was allowed to pursue complaints of this nature. All concerning medical issues and trying to keep in stride with what was occuring. My complaints as I stated before was discarded and Paul Sackett was acting as if they didnt exist many inmates at C.C.A., LA.E.C.I have this problem.

62.) Paul Sacketts mishandling of my grivances, dereliction of duties and retaliation for utilizing my grievance procedure play a key role in furthering the defendants actions in the concealing and attempting to get rid of condemning information they had duty to report. Also interupting the due process as exhaustion is a prerequsite to bringing action. And his actions violated my 1st amend. right to seek redress. that is protected I did appeal Paul Sacketts conduct report to Brigham Sloan,Warden and Gary Mohr,Director, Both defendants allowed the retaliatory conduct report to stand and the disciplinary measures to be carried out. None of the due process procedures was followed in the course that.

64.)I was at the beginning stages of the disciplinary process of Paul Sackketts conduct report, on 11-30-2016 defendant Brigham Sloan happened to be walking by, I asked the hearing officer to speak with him. I explained to Brigham Sloan what was occuring. I said,"Crimes have been commited against me, my medical records are being released illegaly,Ineed to get that stopped immediately and ensure that my records are preseved.

20

I have been issued this conduct report, inratallation and these allegations are false I wrote Paul Sackett three grievances before he made these allegation. I need more time and access to my files." Brigham Sloan then stated tell me again ten words or less." I said ,"what" He then made a decision to disregard what I was saying he instructed the hearing officer to continue with discipline and told me to file a grievance if I felt I was retaliated against. So I did file another Direct grievance.

65.) Brigham sloan was required by law to initiate investigations into the matter under O.A.C. 5120-9-04 and state and federal laws. His decisions further allowed what was tkin g place. He did disregard and ignore what I was telling him in

66.) I had asked several staff members here to be able to place a call to the chief inspector and as well as the federal FEDAERAL BEREAU OF INVESTIGATION. Including my assistant unit manager and also my unit manager. People acting under the color of law, took me to an outside hospital, when I was needing legitimate medical attention. Injected me with very caustic very caustic chemicals, used to kill animals and death penalty type of treatments. Falsified documentation to the BUREAU OF CRIMINAL INVESTIGATIONS, AS IF I was dead, and as if it happened by self inflicted hanging. There was other substances used as wellprobably naturally occuring biological weapons, took me back under the care of O.D.R.C., transfered me through two facilities off the record, though I was listed as dead in state agencies files and records. Nobody did any thing to help me or anything that was supposed to occur. Instead took active steps to conceal and cover up what had occured discarded my grievances, retaliated against me for filing against staff here when I tried to go to them about it. I was thrown in a freezing

21

ice cold cell and left to suffer the effects of these chemicals.

67.) As A further means of retaliating against me,and also as a means of discrediting me Mental health began to make changes to my diagnosis and make entries in my mental health file that would question my competence and work to discredit what I was

attempting bring to attention and as well as grieve. Medical administrative actions I was calling into question was now being discredited though mental health figures, instead of recognizing and reporting criminal conduct and evidence of it. Also denying me access to my file and the electronic,paer inter disciplinary notes was denying me access to grieve and access to courts or complaints to contest the writings,make changes or have things removed in accordance with O.R.C and O.A.C governing mental health psychology.

O.R.C. 4732.17 and O.A.C. 4732-17 series.

68.) I kited Steven Deguire who is the mental health supervisor to find out if he knew that entire portions of my file was being withheld. At that point I was called to a a conference that I did not want to attend. Present was Linda Witt,H.C.A, Dave Rudler,LISW, Paul Sackett, Inspector, Steven Deguire and Sheryl Williams who identified herself as the contract manager, for O.D.R.C. At this meeting I was able to really read the form that Unknown Rebera obtained by fraudulent misrepresentation. I learned that In fact the wording was in in such a manner as that it seemed to authorize release of information to Marion General Hospital, not what I had Been misled to believe. My reading was slower and I had been coming around these administrators were being very manipulitive. Taking advantage any possible way. At this meeting I wanted to discuss other key issues I requested again to put in advance directives

22

all in accordance withe clearly defined liberties and rights created in O.A.C.,and O.R.C. as well as federal law. I will discuss this further in another count as it more pertains to. At that time Steven Deguire notified me," we dont do that" refering to giving me access to my inter disciplinary notes, just tucking behind some notion that they dont have to allow me to access my file. None of the defendants at the meeting would discuss any questions of relevant issues with me. Refused to even allow me to touch my file.

69.) Concealing my files and inter disciplinary notes away from me, while continueing to generate documentation that would knowinglybe inaccurate and false, or issueing opinions consistant with their objectives of discrediting the issues, very relevant and factual issues that I was bringing to the table. Which as I stated before they could attempt to use to restrain my physical liberties, and that I have a right to challenge and make complaints against. This is highly unusual. I decided to stop interacting with mental health. If they wanted to tuck behind a veil and not allow me to monitor their writings of our interactions then I didnt want to allow the interactions. At this point all kinds of documentation had been falsified and the administation was posturing defensively instead of reporting the illegal activity. Mental health then began using security as a means of forcing me to interact with them and as a means of harassment. Having security issue direct orders to go over to mental health, having them wake me up multiple times in a row and threaten me with disciplinary action forcing me in situations where the y could continue to make logs in my contact log, wich I did not want, without being afforded my right to to ensure that accurate and fair logs was being made and my right to access the courts or board of psychology if I had to.

70.) these violations are constitutional as 4723.17 creates

23

creates liberties for me to protect myself from unwanton and innaccurate information being logged into my files, as means to discredit and discourage factual allegations that their is substatial evidence of, alot of wich the administration is in posession of. The indicationa that Dave Rudler and Steven Deguire gave to me was the innacurate legal theory that they consider my interdisciplinary notes as attorney work product.

71.) I did have a meeting with Shannon Swanson who also denied to look into my history with me, who deliberately avoided key questions I directed at her, concerning history and relevant documentation, as well as information that I am entitled to. Further concealing documentation that she is obligated by law to report. In this same interaction an unknown nurse provided false information. Ms. Swanson was the medical authority here that would not lie or make misleading statements, but did omit and refuse to answer relevant medical questions and did disreguard evidence of unlawful conduct that she is obligated to provide to me as well as report to law enforcement as well as medical and insurance authorities.

72.) Once administrators here realized that I was not going to be detured and select grievances was allowed to make it out I had copies of grievances that was withheld. Responses to informal complaint,grievance, and appeal to chief inspectors all answered as if they was registered to chief inspectors office once I discovered that these grievances was not registered and was contained within LA.E.C.I. walls, thats when Paul sackett used the false allegations to divert attention from what he was doing. I then moved for another direct grievance to CHIEF INSPECTORS OFFICE, on that issue, by route of U.S. mail. That direct grievance never made it to the CHIEF INSPECTORS OFFICE,

24

also then later discover that the copies of the documents I had where I had went through the three step process came up missing out of my property. Many grievances of substantial merit are concealed away from STATE oversite in this manner. The grievances and appeals will be responded to as if they are registered and going through state oversite,DEPT. OFFENDER TRACKING SYSTEMS, but are really concealed within the corperation that runs this facility. I just happened to be scrutinizing everything and noticed that the hypertext markup language was not present on the documentation. So much manipulation and falsification had already occured.

### COUNT 2: ACCESS TO COURTS,EQUAL TREATMENT

1.C.C.A. LA.E.C.I. does not allow inmates to go in the
r
red for postage for court filings, copies, or postage. Does provide to me typing paper, or necessary supplies & materials to construct legal papers.

2.)I am forced to pay $3.47 per 100 sheets of typing paper

to prepare legal documents. Then 5¢ per page for every copy that I need of those papers, uneccesarily pushing the costs of litigating to 40¢ per page.

3.)This corporation is not providing the service of lexis nexis or westlaw as all the other facilities in Ohio do provide. They have disconected the service, and removed the cables. As
w
well as locked cabinets around the computers. Inmates only have
a
access to what information that is in memory and what the prison administrators allow us to view. The user product liscense has expired and we operate off memory only.

4.)The computers we research off of are encoded to multiple settings. Staff here decides who gets access to what information, it is not uniform in what access levels are given.

5.)The legal computers have been restricted to view only

25

functions. The y have no print capabilities all functions are removed from them aside from whatever case law that is determined we can I can have. All of the computers with word processors are coded to where only certain inmates are allowed to access them, determined by staff who has those codes and can compose on them. Generally no legal documents can be composed on the computers with word processor and print capabilities.

6.) Inmates who are in school, or programs are allowed to access the computers and allowed to print copies are free to them. All other inmates in O.D.R.C. are allowed to access word processors and also produce copies off them, wich reduces costs of litigation to 5¢ per page at most. Instead of the 40¢ here at LA.E.C.I.'s law library.

7.)Only the legal Dept. at LA.E.C.I. is restricted to using the type writers. This unecessary resriction denies access to spell check, editing viewing documents before mistakes are made and tremendously slows down the process of litigation while increasing the costs.

8.)The restrictions was put in place for some alleged "security" measure. However, these allegations have not been justified for anyone besides the law library here at LA.E.C.I. As all other prisons in O.D.R.C. are providing the services without "security" concerns, also all the other area's in this facilities dept.'s computers was restored to original functionality exept the legal dept.'s.

9.)The type writers we are forced to use are often without ribbons and many are having problems, wich backs up the the litigation and causes sever cloggage of people trying to to meet deadlines for filing.

10.) The reason the service of Lexis Nexis is not offered i is very motivated by #1) financial reasons and #2) the "updating"

26

of the memory allows for screening and restricted information access. Choosing wich case law and information is available to litigants in this facility, when all other inmates in O.D.R.C. are provided the services and are not restricted "updates" wich restrict what is available. All other inmates do have access to firefox web browser or west law, lexis nexis services with the search engines "shepardizing and instant updates". As well as the access to compose on word processors with print capabilities and font,formatting all of the things that ensure meeting deadlines and cutting out errors in documents, using cut and paste techniques instead of manually taking information that is available and writing it all down then to type it (if you can get a type writer or ribbon) at 34.7¢ per page then copy it at another 5¢ per page.

11.)There is no legitimate penal interest in these restriced procedures. They are stricktly motivated by #1 financial gains for the corporation. they make more money at the commisary for copy paper and they save money not paying for the services of westlaw, lexis nexis. Also is motivated by #2 supressing litigant activities and of what nature the litigants are pursuing.

12.) there are cameras in this library at any time the security can view the monitors to see what is being done, and the librarians often make rounds. So the "security" concern just isn't there.And these restrictions are only for the law library guys and doesn't apply to some very select few, and only at LA.E.C.I.

13.) All of these resrictions, the costs of producing documents then coupled with the price of postage for courts, for service requirements, the fact that LA.E.C.I. does not allow inmates to go in the red for materials, postage, copies for litigation they do deny access to the courts, they do deny

27

equal treatment when similarly situated inmates here at this facility and the other O.D.R.C. facilities are treated differently and there is no rational relation between the differential treatment and a legitimate penological interest for the disimilarities.

14.) The facts outlined in this count also work in conjuntion with count 1, these are pile on top of the facts that Im being denied access to my entire interdisciplinary notes paper,electronic, for my mental health file and on top of the fact that UNKNOWN REBERA handling of my attempts to review my medical records wre in a manner that did not allow me meaningful opportunity.

28

## RELIEF REQUESTED

1.) Agiainst defendantst MARION GENERAL HOSPITAL,UNKOWN INSURANE

COMPANY, MELISSA S. KNARR,D.O.,UNKNOWN CHIEF MEDICAL OFFICER

**DECLARITORY RELIEF : Due process violated for failing to**
advise of diagnosis, failing to advise me of any chemicals,

substances used, Failing to advise me of any dangers, risks

or side effects associated with the use of the substances.

**EQUAL PROTECTIONS VIOLATED:** Failing to adhere to standards of

care, STATE and FEDERAL statutes that guarentee that I have

A right to informed consent of any and all aspects of any

chemicals and substanses, as well as the right of choice. Also

Equal rights violated by fraudulent mirepresentation, and

omission of details and facts to obtain my signature, Law require

that MELISSA S. KNARR, D.O., was required to explain the entirety

of what I was signing for, not misleading inaccurate and ommisive

statements to obtain my signature.

**CRUEL AND UNUSUAL PUNISHMENT:** The administration of substances

and chemicals for the malicious purpose of wanton infliction

of serious physical harm, that would knowingly cause irreparable

physical and psycological and emotional damage is 8th amend.

These chemicals are designed to kill an not heal and require

all kinds of procedural safeguards including the entire judiciary

process, JUDGES ORDERS ect.

**PUNITIVE AND COMPENSATORY:** 13,000,000.00 pain and suffering

Medical bills for the rest of my life upon releas fromm prison.

2.) Against defendant CORRECTIONS OFFICERS C.D.,E.F.,

**DECLARITORY RELIEF: EQUAL PROTECTIONS, LIBERTIES VIOLATED**

I had a clear legal right to privacy of my protected health

information under O.R.C. and FEDERAL statutes, OFFICERS C.D.,E.F.

Knowingly deprived me of equal protections of the law by Videoing

Texting and presonal communications of that information and

what was occuring inside the the hospital.

<u>PUNITIVE DAMAGES:</u> 10,000.00 each against OFFICERS E.F.,G.H.,

2.) Against defendant OPUKU ADUSE, C.N.P.,UNKNOWN INSURANCE

<u>CRUEL AND UNUSUAL, EQUAL PROTECTIONS VIOLATIONS:</u>

Deliberately ignoring catastrophic results of the injections

and failing to adhere to standards of carefiling false reports

to the B.C.I. in attempting to conceal what was occuring, as

well as diregarding evidence electronic and paper documentation

of criminal conduct by MARION GENERAL HOSPITAL.

<u>PUNITIVE AND COMPENSATORY DAMAGES:</u> 2,000,000.00

3.) NURSE A.B.,C.D.,E.F.,G.H.,I.J.

<u>EQUAL PROTECTIONS VIOLATED, DELIBERATE INDIFFERENCE 8th AMEND.</u>

Failed to adhere to standards of care, knowingly disregarded

signs and symptoms of serios complications, intentionally and

knowingly falsified reports of vital signs and intentionaly

omitted serious physical examinations observations.

<u>PUNITIVE AND COMPENSATORY DAMAGES:</u> 10,000 each

4.) Against UNKNOWN CHIEF MEDICAL OFFICER, UNKNOWN TURNER

<u>EQUAL PROTECTIONS VIOLATIONS, DELIBERATE INDIFFERENCE 8th AMEND.</u>

Failed to adhere to standards of care, deliberately ignored

serious warning signs, also did not intervien allowed false

reports to be registered to the B.C.I., did nothing to prevent

violations of law and nothing to report criminal actions commited

by MARION GENERAL HOSPITAL

<u>PUNITIVE AND COMPENSATORY DAMAGES</u>    50,000.00 each

<u>DECLARATORY RELIEF:</u>

Right to equal protections of the law, right to accurate
information in my files, violations of liberty interests in

only being subject to accurate information in my files at

institutional level and at B.C.I., F.B.I., level. Right to have

appropriate corrections made in those informations systems and

right to revers all paper and elecronic information that is the results of the falsified documentation that was entered into the systems by the defendants.

5.)  Against defendants JASON BUNTING, WARDEN.

**EQUAL PROTECTIONS VIOLATIONS:** Knowingly purposely entered false innacurate documentation into my file, filed false reports of "suspicious" death and aided in obstructing of STATE HIGHWAY PATROL investigation.

**PUNITIVE AND COMPENSATORY DAMAGES:**   50,000.00

6.) Against UNKNOWN DEP. WARDEN OPERATIONS, DEP. WARDEN SPECIAL SERVICES, UNKNOWN MAJOR.

**PUNITIVE AND COMPENSATORY DAMAGES:**   50,000.00 each.

**DECLARITORY RELIEF:**  Failed to protect me aided and contributed to wanton infliction of serious physical, psycological and emotion harm. Knowingly subjected me to sub zero temperatures for weeks cruel and unusual. Knowingly misled a STATE HIGHWAY PATROL INVESTIGATION

7.)BRIGHAM SLOAN, WARDEN 20,000.00 punitive
8.) PAUL SACKETT, 20,000.00 plus 100.00 per day 21 days of disciplinary sanctions.
9.) UNKNOWN FISHER 20,000.00 punitive

**DECLARATORY RELIEF:**  First Amendment violations Equal protections and Due process violation. Failed to adhere to the STATE GRIEVANCE PROCEDURES, allowed retaliatory conduct report and disciplinary procedures to stand for exersizing a protect liberty of seeking redress.

Aided and took part in conspiring to deprive the plaintiff of constitutional rights.

10.) Against LINDA WITT, H.C.A., UUNKNOWN REBERA,R.N.,

SHANNON SWANSON,C.M.O., UNKNOWN AIKEN,C.N.P.,

**EQUAL PROTECTIONS VIOLATIONS:** These four defendants violated

my constitutional rights to equal protections of the law, failing

to report unlawful conduct failing to adhere to the processes

outlined in O.D.R.C policy 68-med-series. O.A.C. 5120-9-60 and

denied me equal protections of the law in O.R.C. 4723 series.and
O.A.C. STANDARDS OF CARE FOR PATIENT SAFETY.

**MEANINGFUL ACCESS TO COURTS:** The defendants purposely knowingly

with held information, aided in concealing and denying me access

to information to grieve and access the courts knowingly conspire

to release condemning evidence and to obtain my signature by

fraudulent mirepresentation of facts acting under the color

of law, to use trickery and deception to attempt to shield them

selves of liability.
**PUNITIVE AND COMPENSATORY DAMAGES**25,000.00 each.

11.) against defendants STEVEN DEGUIRE,PHD, UNKNOWN TRAN,M.D
DAVE RUDLER LISW

**EQUAL PROTECTIONS VIOALIONS,DENYING MEANINGFUL ACCESS TO COURT.**
**P**
Declaritory relief in that O.R.C., and O.A.C. CREATE LIBERTY
I
interests in 1.) accessing my personal mental health information

2.)having accurate information logged into it 3.) being able

to make changes to it if I disagree. these liberties are

protected by the constition. As well as the right to seek redress

in the form of grievance, complaints to the board of psycology

and as well in civil courts. denying me access to that

under some veil prevents me from accessing grievance and the

courts and denies me equal protections of the law.

Also have liberty interest in abstaining from opinions and logs

that can be used to restrain my freedom, and in retaliation

in the form of mental health logs and opinions that are motivated

in protecting their coworkers actions. And as a means of

discrediting the issues Im grieving and accessing the courts
o
on.

OTHER RELIEF REQUESTED: Im going to be asking that the defendants

incur all costs of prosecution of this action as well as all

court costs of discovery matters, copies and productions of

documents associated in this matter as well as all attorney

fees ( If the court so decides to appoint counel.)

(JURY TRIAL DEMANDED ON COUNT 1)

RELIEF REQUESTED COUNT 2:

1.) Allow me access to the word processors so that I can

compose documents on them for litigation purposes.

2.) Declare the restrictions are unecessarily implemented

and violate equal treatment clauses. That inmates trying to
a
access the courts at LA.E.C.I. are entitled to the same services

that are offered to all the other O.D.R.C. inmates.

3.) The access to west law, lexis nexis services are not

restricted for any valid penal interest.

4.) the added costs associated with not having access to

word processors create undue financial burden on litigants at

LA.E.C.I.

5.) LA.E.C.I. must allow inmates to go in the red for postage,

copies and necessary supplies for legal documentation. As to

not deny me access to courts or materials based on financial

constraints interfering with time lines and as well as

service requirements, related costs associated with litigation.

I HEREBY DECLARE UNDER THE PENALTY OF PERJURY THE FOREGOING

COMPLAINT IS TRUE AND CORRECT.

RESPECTFULLY SUBMITTED,

Jason Paul Wolfe 4/9/17

33